DIGNITY TWIN CITIES, Minneapolis Commission on Civil Rights, Respondents,

v.

The NEWMAN CENTER AND CHAPEL, et al., Relators.

No. C7–90–2667.

Court of Appeals of Minnesota.

June 25, 1991.

Review Denied Aug. 29, 1991.

Elizabeth M. Pierce, Messinger, Ojile & Pierce, Minneapolis, for Dignity Twin Cities.

Robert J. Alfton, Minneapolis City Atty., Allen B. Hyatt, Asst. City Atty., Minne-

apolis, for Minneapolis Commission on Civil Rights.

Andrew J. Eisenzimmer, Meier, Kennedy & Quinn, St. Paul, for The Newman Center and Chapel, et al.

Considered and decided by SHORT, P.J., and FORSBERG and SCHUMACHER, JJ.

## OPINION

FORSBERG, Judge.

Respondent Minneapolis Commission on Civil Rights (Commission) determined relators, The Newman Center and Chapel; The Roman Catholic Archdiocese of the Twin Cities; and its Archbishop, John Roach, engaged in discrimination on the basis of affectional preference against respondent Dignity Twin Cities (Dignity). Relators have filed a petition for a writ of certiorari challenging the Commission's action as an infringement of its free exercise of religion rights under the United States and Minnesota Constitutions; as unsupported by substantial evidence; and as in excess of statutory authority. We reverse.

## FACTS

Dignity is an organization predominately made up of gay Catholics. While being primarily religious in purpose, Dignity is not affiliated with the Roman Catholic Archdiocese. The group purports to strive for education, support, fellowship and worship within the Catholic tradition and community.

For a number of years, Dignity rented space from The Newman Center and Chapel in Minneapolis. Dignity paid a rent of $150 per month for the use of meeting rooms and chapel facilities. The Newman Center also rented space to other groups including Alcoholics Anonymous, Central American Resource Center, the Alliance for Sustainable Agriculture, and Weight Watchers. None of the other organizations rented chapel or religious space, nor in any way utilized their space for religious purposes.

In 1986, Archbishop John Roach was instructed by the Vatican to make a determination as to whether pastoral practices in his Diocese were consistent with the "Letter to Bishops on the Pastoral Care of Homosexual Persons." This instruction required all Catholic Bishops to disallow any organization taking a contrary position on homosexuality from using church facilities. The pastoral letter's position was contrary to Dignity's held belief that "gay men and lesbian women can express their sexuality in a manner that is consistent with Christ's teaching * * * [and] we can express our sexuality physically and in a unitive manner that is loving, life giving and life affirming."

In response to the instruction, the Dignity board was asked to sign a document attesting its agreement and affirmance of the church's teaching on homosexuality. Dignity refused to sign the document. Dignity was the only organization renting space from The Newman Center required to author such a document. As a result of Dignity's refusal, their lease with The Newman Center was not renewed.

Dignity filed a complaint with the Department of Civil Rights, which initially dismissed the complaint on jurisdictional grounds finding such action was excessive entanglement in religious affairs. Appeal was taken to the Commission Appeals Board; the order was reversed, and the complaint allowed to go forward. The Commission found relators in violation of the Minneapolis Civil Rights Ordinance's protection against discrimination on the basis of affectional preference. The Commission awarded actual damages of $100, punitive damages of $8,500, attorney fees of $10,850.38, a civil fine of $15,000, and issued a Cease and Desist Order enjoining relators from future discriminatory conduct. Relators initiated this appeal from the Commission's order by petition for writ of certiorari.

## ISSUE

Is enforcement of the Minneapolis Civil Rights Ordinance as to relators' rental of space to Dignity excessive entanglement of government in religious affairs and a violation of relators' right to free exercise of

religion under the United States Constitution?

## ANALYSIS

In finding discrimination, the Commission determined The Newman Center facility has a "dual religious/secular nature." The Commission determined an order for relief as to the religious facilities would be a clear burden on religious exercise. However, the Commission concludes no such burden attaches where the Commission enforces its regulations as to the secular functions of the facility. While we agree with the Commission's conclusion of law as to the appropriateness of burdening religious as opposed to secular facilities, we believe the Commission erred in its application of this conclusion to the facts of this case.

■ In reaching our decision, we are mindful that, in entanglement analysis, "we examine the form of the relationship for the light that it casts on the substance." *Lemon v. Kurtzman,* 403 U.S. 602, 614, 91 S.Ct. 2105, 2112, 29 L.Ed.2d 745 (1971). Here, the form of the relationship between the parties was clearly religious. The Commission misread the mixed nature of The Newman Center as being dependent on which room or section of the facility was used. The religious or secular nature of The Newman Center's relationship to various tenants is dependent on the user of the facility, not the portion of the facility used. Thus, a facility may be entirely a church or entirely a gymnasium, depending upon the use to which the tenant puts the building.

■ Here, Dignity's sole reason for using the facility was for worship and involvement in the Catholic tradition. For Dignity, there were no secular areas of The Newman Center. They utilized the facility because of its religious identity. The other groups renting the facility did so not because it was religious space, but rather because the space offered other secular functions.

■ In determining whether state action constitutes excessive entanglement, a court must undertake an examination of the character and purposes of the groups involved, the nature of the state's involvement, and the relationship that results between the state and religious authority. *Id.* at 614–15, 91 S.Ct. at 2112. In this case, we conclude the nature of the state's activity clearly evinces excessive entanglement. Indeed, even under the Commission's reasoning, this conclusion is called for when the entire relationship between the parties is properly viewed in its religious context. A city or municipality is without jurisdiction to enforce civil rights protections against a religious organization enforcing conformity of its members to certain standards of conduct and morals. *See Serbian Eastern Orthodox Diocese v. Milivojevich,* 426 U.S. 696, 713–14, 96 S.Ct. 2372, 2382–83, 49 L.Ed.2d 151 (1976). We therefore conclude the order of the Commission must be reversed as excessive entanglement in religious affairs contrary to the first amendment of the United States Constitution.

Relators have raised a number of other issues which we decline to reach since our determination on this issue is dispositive of all claims.

## DECISION

We reverse the Commission's decision as being an impermissible invasion of relators' free exercise rights under the first amendment of the United States Constitution and therefore outside the Commission's jurisdiction.

Reversed.